WILLIAM A. FLETCHER, Circuit Judge,
dissenting:
The question in this case is whether a tribal court has jurisdiction over a product liability suit brought by the surviving parents of a tribal police officer, where the on-duty officer, driving a police vehicle designed, manufactured, and sold to the tribe by the defendant, was killed in a one-car rollover accident on a tribal road. The majority denies tribal court jurisdiction despite our recent decision in McDonald v. Means, 309 F.3d 530, amending prior opinion at 300 F.3d 1037 (9th Cir.2002), holding that tribal courts have subject matter jurisdiction over a suit between a tribal member and a nonmember arising out of an accident on a tribal road. The majority may not like our decision in McDonald, but it is bound by it. Because the majority fails to follow McDonald, I respectfully dissent.
I. Factual Background
Plaintiffs are the parents of Esther To-decheene, a deceased Navajo Nation law enforcement officer. Officer Todecheene died from injuries sustained when her Ford Expedition patrol vehicle rolled over in a one-car accident. The rollover occurred while Officer Todecheene was on duty, driving on a tribal road.
The Navajo Nation had bought the Ford Expedition for use as a police vehicle through one of the many bulk purchases it had arranged with Ford Motor Credit Company, a wholly owned subsidiary of defendant Ford Motor Company (“Ford”). The Todecheenes sued Ford for damages in the tribal court of the Navajo Nation, alleging that defects in the design or manufacture of the Expedition caused the rollover. Ford first sought to remove the Todecheenes’ suit to federal court, but the district court remanded to the tribal court because there is no statute permitting removal from tribal courts to federal district court. See Nevada v. Hicks, 533 U.S. 353, 368-69, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). After remand, the Navajo Nation tribal court held that it had jurisdiction. *1184 Ford then brought suit in federal district court, contending that the tribal court did not have jurisdiction. Without the benefit of our amended opinion in McDonald, the district court held that the tribal court lacked jurisdiction over the Todecheenes’ suit. The district court preliminarily enjoined the Todecheenes from pursuing their suit in tribal court. The Todecheenes appeal that ruling to us.
II. Supreme Court Case Law
The Supreme Court has not answered the precise question posed in this case. In Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Court addressed the question whether a tribe could regulate hunting and fishing by non-Indians on non-Indian property located within the reservation. The Court held that a tribe could not regulate the activities of non-Indians on non-Indian fee lands except under two circumstances. First, “[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.” Id. at 565, 101 S.Ct. 1245. Second, “[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Id. at 566, 101 S.Ct. 1245. The precise wording of the second exception is tailored to cases involving conduct on non-Indian fee lands within the reservation. The exception does not purport to provide a rule for cases involving conduct on tribal land.
In Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), decided sixteen years later, the Court imported Montana’s analysis of a tribe’s regulatory reach into its analysis of a tribal court’s subject matter jurisdiction and held that “[a]s to nonmembers, ... a tribe’s adjudicative jurisdiction does not exceed its legislative jurisdiction.” Id. at 453, 117 S.Ct. 1404. The Court in Strate held that a tribal court had no jurisdiction over a suit brought by tribal members against nonmembers arising out of an automobile accident on a state highway within the reservation. In a case arising on non-Indian land, the Court was careful to adhere to its earlier formulation of the second exception in Montana. It wrote:
Read in isolation, the Montana rule’s second exception can be misperceived. Key to its proper application, however, is the Court’s preface: “Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.... But[a tribe’s inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations.” 450 U.S. at 564, 101 S.Ct. 1245. Neither regulatory nor adjudicatory authority over the state highway accident at issue is needed to preserve “the right of reservation Indians to make them own laws and be ruled by them.” Williams [v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)]. The Montana rule, therefore, and not its exceptions, applies to this case.
Id. at 459, 117 S.Ct. 1404 (ellipses and all brackets except the last in original). The Court in Strate was also careful to state that its holding — and its narrow reading of Montana’s second exception — were confined to a case in which the accident occurred on non-Indian land. It wrote, “We express no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation.” Id. at 442, 117 S.Ct. 1404.
*1185 Finally, in Nevada v. Hicks, decided four years after Strate, the Court held that a tribal court did not have jurisdiction over “civil claims against state officials who entered tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation.” 533 U.S. at 355, 121 S.Ct. 2304. As in Strate, the Court was careful to note the limited nature of its holding: “Our holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general.” Id. at 358 n. 2, 121 S.Ct. 2304. Although the Court in Hicks denied tribal jurisdiction over a suit arising out of an incident on tribal land, it stated explicitly that Indian land ownership remains a relevant factor in the jurisdictional calculus. It wrote, “The ownership status of land ... is only one factor to consider in determining whether regulation of the activities of nonmembers is ‘necessary to protect tribal self-government or to control internal relations.’ ” Id. at 360, 121 S.Ct. 2304 (quoting Montana, 450 U.S. at 564, 101 S.Ct. 1245).
Justice O’Connor wrote a separate concurrence in Hicks, which the Court characterized as “in large part a dissent from the views expressed in [the] opinion.” Id. at 370, 121 S.Ct. 2304. Justice O’Connor contended that the Court’s opinion in Hicks gave short shrift to the tribe’s ownership of the land on which the incident had taken place. In replying, the Court emphasized the importance of tribal land ownership in the jurisdictional calculus. It wrote:
The principal point of [Justice O’Con-nor’s] concurrence is that our reasoning “gives only passing consideration to the fact that the state officials’ activities in this case occurred on land owned and controlled by the Tribes.” According to Justice O’Connor,, “that factor is not prominent in the Court’s analysis.” Even a cursory reading of our opinion demonstrates that .this is not so. To the contrary, we acknowledge that tribal ownership is a factor in the Montana analysis, and a factor significant enough that it “may sometimes be ... disposi-tive. ”
Id. at 370, 121 S.Ct. 2304 (emphasis added; internal citations omitted; ellipsis in original).
Justice Souter also wrote a separate concurrence in Hicks. He wrote that he would reach the Court’s conclusion but “by a different route.” Id. at 375, 121 S.Ct. 2304. Justice Souter’s route deviated from the Court’s in that he attached less importance to the ownership status of the land. Unlike the Court, Justice Souter said that he “would thus make it explicit that land status within a reservation is not a primary jurisdictional fact, but is relevant only insofar as it bears on the application of one of Montana’s exceptions to a particular case.” Id. at 375-76, 121 S.Ct. 2304. But Justice Souter made clear that even in his view the status of land remained relevant: “Thus, it is not that land status is irrelevant to a proper Montana calculus, only that it is not determinative in the first instance. Land status, for instance, might well have an impact under one (or perhaps both) of the Montana exceptions.” Id. at 382 n. 4, 121 S.Ct. 2304.
As is evident from the foregoing, the Supreme Court has not answered the question whether a tribal court has jurisdiction over a suit between a tribal member and a nonmember arising out' of an accident on a tribal road. Indeed, the foregoing makes clear that the Court has specifically avoided answering that question. But, at the very least, as the Court indicated in «its opinion in Hicks, tribal ownership of the land on which an incident occurs is a “significant” factor that “may sometimes be ... dispositive.”
*1186 III. McDonald v. Means
In McDonald v. Means, decided in 2002, a year after the Supreme Court’s decision in Hicks, we held that a tribal court had jurisdiction over a suit between a tribal member and a nonmember arising out of an accident on a tribal road. In so holding, we answered the question that had been left open by the Court. As the dissenting judge wrote in McDonald, we were answering “a question of first impression.” 309 F.3d at 543 (Wallace, J., dissenting).
The facts in McDonald were straightforward. McDonald, who was not a member of the Cheyenne Tribe, owned a horse that had wandered onto a Bureau of Indian Affairs (“BIA”) road within the Northern Cheyenne Indian Reservation. Means, a member of the Cheyenne Tribe, was seriously injured when his car struck the horse. Means’s guardian brought suit in tribal court against McDonald and his family, who objected to the court’s jurisdiction.
We carefully considered Hicks, as well as Montana and Strate, and concluded that they did not answer the question before us. We wrote:
McDonald argues that the majority’s analysis “is not consistent with” the Supreme Court’s decision in Nevada v. Hicks, that the ownership status of land is not dispositive in determining that a tribal court lacks jurisdiction over a civil claim against state officers who enter tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation. However, the Court noted that “[o]ur holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general.” The limited nature of Hicks’s holding renders it inapplicable to the present case.
McDonald, 309 F.3d at 540 (citations omitted).
In a footnote, we explained in detail why we did not read Hicks to bar jurisdiction in the tribal court:
McDonald argues that Hicks suggests the rule in Montana should be extended to bar tribal jurisdiction not only over the conduct of nonmembers on non-Indian fee land but on tribal land as well. See [Hicks,] 533 U.S. at 359, 121 S.Ct. 2304 (interpreting Montana to state a “ ‘general proposition [that] the inherent sovereign powers of an Indian Tribe do not extend [to] the activities of nonmembers of the tribe’ except to the extent ‘necessary to protect tribal self-government or to control internal relations’ ”). Montana itself limited its holding to nonmember conduct on non-Indian fee land, 450 U.S. at 557, 101 S.Ct. 1245, (“[T]he power of the Tribe to regulate non-Indian fishing and hunting-on reservation land owned in fee by nonmembers of the Tribe.”), and Strate [v. A-1 Contractors ] confirmed that limitation, 520 U.S. [438,] 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 [ (1997) ] (’’Montana thus described a general rule that ... Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation .... [”]). Even if Hicks could be interpreted as suggesting that the Montana rule is more generally applicable than either Montana or Strate have allowed, Hicks makes no claim that it modifies or overrules Montana. Montana limits its scope to a Tribe’s civil authority over the conduct of nonmembers on non-Indian fee land, and Strate affirms that limitation. Our holding therefore fits squarely within Montana, which both Strate and Hicks characterize as the “pathmarking case.” See *1187 Hicks, 533 U.S. at 358, 121 S.Ct. 2304; Strate, 520 U.S. at 445, 117 S.Ct. 1404.
Id. at 540 n. 9 (parallel citations omitted).
We held that the BIA road was a tribal road, and that the tribal court had jurisdiction over the suit between Means, who was a tribal member, and McDonald and his family, who were nonmembers:
We hold that the nature and the purpose of the grant [of the road to the BIA], the continuing control exercised by the Tribe over the road, and the Supreme Court’s previous treatment of BIA roads support the conclusion that the tribal court has jurisdiction to entertain Means’s suit against the McDonald family.
Id. at 540. McDonald was explicitly based on the fundamental principle contained in Supreme Court ease law that “[tjribes maintain considerable authority over the conduct of both tribal members and nonmembers on Indian land, or land held in trust for a tribe by the United States.” Id. at 536.
IV. The Majority Opinion
The majority wants to ignore inconvenient aspects of the Supreme Court cases on which it relies. The second exception in Montana allows tribal court jurisdiction over suits involving conduct that “threatens” or “has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe.” 450 U.S. at 566, 101 S.Ct. 1245. The majority emphasizes the precise wording of the exception, and in particular the precise wording of its stated purpose, as formulated in Montana and later recited in Strate. Maj. Op. at 1181. What the majority does not emphasize is that the precise wording of the exception and its stated purpose were chosen and applied in two suits involving conduct on non-Indian land. When, by contrast, the Court addressed conduct on tribal land in Hicks, it did not rely on that precise wording. Rather, it now referred to the “general rule” of Montana. 533 U.S. at 360, 121 S.Ct. 2304. It wrote that under that general rule, “[t]he ownership status of land ... is only one factor to consider in determining whether regulation of the activities of nonmembers is ‘necessary to protect tribal self-government or to control internal relations.’ It may sometimes be a dispositive- factor.” Id.
In Hicks, the precise wording of Montana’s second exception became a general test based on the strength of the tribe’s interest in self-government. The Court in Hicks held that the tribe’s ownership of the land, and its accompanying interest in self-government, did not outweigh the state’s interest in executing its search warrant on tribal land. ‘We simply do not find [the fact that the state officials’ activities in this case occurred on land owned and controlled by the Tribe] dispositive in the present case, when weighed against the State’s interest in pursuing off-reservation violations of its laws.” Id. at 370, 121 S.Ct. 2304. But, at the same time, the Court “acknowledge[d] that tribal ownership is a factor in the Montana analysis, and a factor significant enough that it ‘may sometimes be ... dispositive.’ ” Id.
The majority prefers the separate concurrences of Justices Souter and O’Connor to the opinion of the Court in Hicks, for they de-emphasize the importance of tribal ownership . of land. But these concurrences do not have the force of law. Justice Souter himself acknowledged that his concurrence took a “different route” from the opinion of the Court, id. at 375, 121 S.Ct. 2304, and the Court responded to Justice O’Connor’s, separate concurrence by noting that it was “in large , part a dissent.” Id. at 370, 121 S.Ct. 2304.
After Hicks, the “general rule” of Montana applies to activities on both Indian and non-Indian land. On non-Indian land, *1188 the precise wording of Montana’s second exception may or may not still apply. On tribal land, however, the precise wording of the second exception has pretty clearly been replaced by a “general rule” in which the strength of the tribe’s interest in self-government is weighed against the interest of the defendant who does not want to appear in tribal court. After Hicks, a court should weigh — as the Hicks Court did — the tribe’s ownership of the land and accompanying interest in self-government, on the one hand, and the countervailing interest of the nonmember defendant on the other.
The majority also wants to ignore our decision in McDonald. It spends several pages analyzing the Supreme Court cases, including Montana, Strate, and Hicks, that we held in McDonald did not answer the jurisdictional question posed by a suit arising out of an accident on a tribal road. Maj. Op. at 1174-77. The majority then relies heavily on the district court’s analysis in this case distinguishing McDonald, even though the district court relied on our first, unamended opinion in McDonald, which did not address Hicks. Maj. Op. at 1178-79.
The majority distinguishes McDonald on the asserted ground that in that case the tribe’s interest in self-government was greater than in this case. It writes, “Central to McDonald’s ruling was the fact that a non-member’s horse had wandered onto the roads of the reservation, thereby impacting the interest of the tribe in keeping its roadways free from obstruction. No similar circumstance existed in this case.” Maj. Op. at 1182. I agree that a tribe has an interest in the safety of travel on its tribal roads. But a tribe’s interest in the safety of its roads, including its interest in “keeping its roadways free from obstruction,” cannot logically be limited to controlling stray livestock. The tribe’s interest in the safety of its roads — and keeping those roads “free from obstruction” — extends equally to rollover accidents on those roads.
In its attempt to escape McDonald, the majority characterizes this ease as just “a product liability case.” It writes:
We agree with the district court that the exercise of tribal jurisdiction is a less compelling proposition in a product liability case than in a case such as McDonald, where the Tribe was protecting its interest in having its roads free from trespass by neighboring livestock. If the mere occurrence of an accident on the reservation is sufficient to warrant the assertion of jurisdiction, tribal jurisdiction over nonmembers will become the rule.
Maj. Op. at 1178 (emphasis added). But this is not just a product liability case. It is, instead, a case in which the defendant allegedly designed and manufactured a fatally defective vehicle; the defendant sold that vehicle to the tribe for use by its police officers; and the vehicle rolled over and killed one of the tribe’s police officers. Not only is this a case about the safety of the tribe’s roads. Not only is this a case about the safety of products sold to tribal members. This is also a case about the ability of a tribe to ensure the safety of its police officers as those officers drive on tribal roads, protecting tribal members and enforcing tribal law.
Under the weighing process prescribed in Hicks, we must weigh the self-government interest of the tribe in ensuring the safety of its roads and the safety of tribal police officers while driving on those roads against the interest of the defendant in escaping the tribal court’s civil jurisdiction. The majority concludes that the tribe’s interest in self-government is greater in a case arising out of an accident involving a stray horse than in a case arising out of the death of a tribal police officer caused *1189 by an allegedly defective vehicle. I agree with the majority that the tribe has a self-government interest in keeping its tribal roads free of obstruction, as we held in McDonald. I do not understand why the majority does not agree with me that the tribe has an even greater self-government interest in protecting the lives of its police officers on those roads.
I respectfully dissent.